KORMAN, District Judge,
concurring:
While I agree that Koiehi Mera, one of the plaintiffs, meets the “irreducible constitutional minimum” requirements to allege Article III standing, Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), and do not take issue with the manner in which the majority resolves the merits of the appeal, I write separately to suggest that the plaintiffs have not alleged a valid cause of action that anchors their claim of foreign affairs preemption. Simply mouthing the words foreign affairs preemption does not do it. The plaintiffs assert only in the vaguest manner that their complaint is brought under 42 U.S.C. § 1988. Nevertheless, Section 1983 cannot support then-cause of action. Nor is an equitable cause of action to restrain regulatory action in violation of the Constitution available here.
I. Section 1983.
The availability of a cause of action under Section 1983 depends upon whether a plaintiff has alleged “the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.” 42 U.S.C. § 1983; see also Golden State Transit Corp. v. City of Los Angeles (Golden State II), 493 U.S. 103, 105, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). The right being deprived here cannot be found in the Supremacy Clause, which “is not the ‘source of any federal rights.’ ” Armstrong v. Exceptional Child Ctr., Inc., — U.S. -, 135 S.Ct. 1378, 1383, 191 L.Ed.2d 471 (2015) (quoting Golden State II, 493 U.S. at 107, 110 S.Ct. 444); see also Associated Gen. Contractors, San Diego Chapter, Inc., Apprenticeship & Training Tr. Fund v. Smith, 74 F.3d 926, 931 (9th Cir. 1996) (“[Preemption of state law under the Supremacy Clause — being grounded not on individual rights but instead on considerations of power — will not [itself] support an action under section 1983.... ” (quoting Segundo v. City of Rancho Mirage, 813 F.2d 1387, 1394 (9th Cir. 1987))); White Mountain Apache Tribe v. Williams, 810 F.2d 844, 848 (9th Cir. 1985) (“We believe that § 1983 was not intended to encompass those constitutional provisions which allocate power between the state and federal government.”).
’ Moreover, neither the Supreme Court nor the Ninth Circuit has ever recognized that the foreign affairs provisions of the Constitution, which certainly do not confer any rights on their face, see, e.g., U.S. Const, art. II, § 2, cls. 1-2; id. art. I, § 8, cls. 1, 3, 4, 10-14, contain an implicit individual right. Indeed, in Gerling Global Reinsurance Corporation of America v. Garamendi, 400 F.3d 803 (9th Cir. 2005), we observed that the district court “may have been correct” in the “abstract” when it concluded that the foreign affairs power did not “implicate a right, privilege or immunity secured by the Constitution or laws of the United States,” id. at 810. Nevertheless, because we concluded they were prevailing parties for reasons that need not be discussed, the plaintiffs were entitled to an award of counsel fees pursuant to 42 U.S.C. § 1988. While we did not ' definitively resolve the is^ue, we “as-sum[ed] that the foreign affairs power does not confer rights within the meaning of § 1983.” Gerling, 400 F.3d at 807. Judge Graber, who concurred in the result, directly addressed the issue. She observed without qualification that “the foreign af *1233 fairs power, like the Supremacy Clause, creates no individual rights enforceable under 28 U.S.C. § 1983.” Id. at 811. Because I agree that the foreign affairs provisions create no individual rights, the plaintiffs lack a cause of action pursuant to 42 U.S.C. § 1983.
II. Equitable Cause of Action.
Unlike' Section 1983, the availability of an equitable cause of action to enjoin purportedly unconstitutional conduct does not necessarily rely upon the fact that a particular constitutional provision confers an individual right on the plaintiff. Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 491 n. 2, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010). Instead, in a preemption case, the availability of such a cause of action hinges on the plaintiffs being subject to an enforcement or other regulatory action. The Supreme Court has long recognized that a plaintiff may bring a suit to enjoin unconstitutional regulatory conduct. Courts often cite as the forebear of that type of equitable action the case of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). See, e.g., Verizon Md. Inc. v. Pub. Serv. Comm’n, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). Young was not a preemption case; it involved a claim by shareholders of a railroad that a state law regulating railroad rates violated, inter alia, the Fourteenth Amendment’s Due Process Clause. Nevertheless, the Young Court held that “individuals who, as officers of the state, ... threaten and are about to commence proceedings ... to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.” 209 U.S. at 155-56, 28 S.Ct. 441.
The Supreme Court has applied that holding in preemption cases, making it clear that, in such cases, the equitable cause of action is available only to enjoin acts of regulation. See Armstrong, 135 S.Ct. at 1384 (“[W]e have long recognized [that] if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.”); see also, e.g., Ray v. Atl. Richfield Co., 435 U.S. 151, 155, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 255-56, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011). In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court reiterated the basis for these types of suits: “A plaintiff who seeks in-junctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute ... presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve,” id. at 96, 103 S.Ct. 2890 n.14; see also Golden State II, 493 U.S. at 113, 110 S.Ct. 444 (Kennedy, J., dissenting) (“[A] private party can assert an immunity from state or local regulation on the ground that the Constitution ... allocated] the power to enact the regulation to the National Government, to the exclusion of the States.”); cf. Alameda Newspapers, Inc. v. City of Oakland, 95 F.3d 1406, 1413 (9th Cir. 1996) (“If a municipality’s action [in a case asserting preemption by the National Labor Relations Act] does not rise to the level of regulation, it is not preempted.”). Although the Shaw Court dressed the inquiry in the language of “jurisdiction,” rather than of “cause of action,” the two inquiries are functionally the same in asking why a plaintiff should be allowed to bring the suit in federal court. Nevertheless, while the questions are intertwined, the Supreme Court recently suggested that the cause-of-action inquiry is not jurisdictional. See Lexmark Int’l, Inc. v. Static Control Components, Inc., — U.S. -, 134 S.Ct. 1377, 1387 n. 4, 188 L.Ed.2d 392 (2014).
*1234 Moreover, the Supreme Court’s cases dealing with preemption specifically in the foreign affairs domain do not suggest the availability of an equitable cause of action outside of the regulatory context. See, e.g., Am. Ins. Ass’n v. Garamendi, 539 U.S. 396, 409-12, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003) (insurance companies brought action alleging preemption of California law requiring disclosure of policies issued to persons in Europe in effect between 1920 and 1945); Crosby v. Nat’l Foreign Trade Council, 530 U.S. 363, 367, 370-71, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (companies who did business with Burma brought action alleging preemption of a Massachusetts statute, the purpose of which was to prevent or discourage them from transacting business with Burma); Zschernig v. Miller, 389 U.S. 429, 432-33, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968) (striking down state law regulating the inheritance rights of foreign beneficiaries of Oregon residents because it did so in a way that constituted “an intrusion by the State into the field of foreign affairs which the Constitution entrusts to the President and the Congress”). Nor do our cases in this area suggest a broader cause of action. See, e.g., Movsesian v. Victoria Versicherung AG, 670 F.3d 1067, 1070-71, 1077 (9th Cir. 2012) (en banc) (foreign insurance companies could raise defensively a challenge to a California law that subjected them to suits in California “by overriding forum-selection provisions and greatly extending the statute of limitations for a narrowly defined class of claims” in a way that constituted an intrusion on the conduct of foreign policy); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 957-59 (9th Cir. 2009) (similar); Deutsch v. Turner Corp., 324 F.3d 692, 703, 716 (9th Cir. 2003) (similar).
In sum, this case involves a purely expressive, non-regulatory action by the City of Glendale that is not alleged to, and does not, implicate any right conferred by the Constitution or laws of the United States, the predicate for a Section 1983 cause of action. Moreover, because the conduct of the City of Glendale does not subject plaintiffs to an enforcement or other regulatory action, it does not come within the category of cases in which an equitable cause of action would be available to restrain conduct that touches on the power of the President or Congress in the area of foreign affairs.